**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DERICK OKWAN, | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | NO. |
| | ) | |
| v. | ) | |
| | ) | |
| EMORY HEALTHCARE INC., | ) | |
| EMORY UNIVERSITY, | ) | JURY TRIAL DEMANDED |
| HUI-KUO SHU, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Derick Okwan, by and through undersigned

counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint,

showing the Court as follows:

## Parties

1.      Plaintiff is a citizen of Ghana legally residing in DeKalb County,

Georgia.

2.      Defendant Emory Healthcare, Inc. ("Emory Healthcare") is a

domestic corporation residing in DeKalb County, Georgia.

3.      Defendant Emory Healthcare is a recipient of federal funding.

4.      Defendant Emory University is a domestic corporation residing in DeKalb County, Georgia.

5.      Defendant Emory University is a recipient of federal funding.

6.      Defendant Hui-Kuo Shu is a resident of DeKalb County, Georgia.

## Jurisdiction and Venue

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI").

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises out of Title VI.

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which arises out of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII")

10.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count IV of this Complaint, which arises out of Title VII.

11.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count V of this Complaint, which arises out of Section 1981 of the Civil Rights Act of 1866 ("Section 1981").

12.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VI of this Complaint, which arises out of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA Title III").

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VII of this Complaint, which arises out of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* ("ADA Title I").

14.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VIII of this Complaint, which arises out of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "RA").

15.     Venue is proper in this Court because the education and employment practices described herein occurred within the Atlanta Division of the Northern District of Georgia.

## Statement of Facts

16.     Plaintiff was admitted to the MD/PhD program operated by Defendants Emory University and Emory Healthcare.

17.     In May 2013, Plaintiff obtained his MD and PhD and became a medical resident in the Department of Radiation Oncology.

18.     In July 2014, Plaintiff was admitted to the medical residency program in the Department of Radiation Oncology operated by Defendants Emory University and Emory Healthcare.

19.     As a medical resident, Plaintiff performed clinical work for wages, but he also attended classes, took tests, conducted academic research, and engaged in the general educational activities of a student.

20.     Completion of a medical residency is a necessary educational prerequisite to becoming a certified radiation oncologist eligible to practice medicine within that specialty.

21.     The radiation oncology medical residency is a four year program.

22.     Plaintiff is a black male.

23.     Plaintiff suffers from depression.

24.     At all relevant times, Plaintiff was the only black resident physician in the Department of Radiation Oncology.

25.     At all relevant times, Plaintiff was the only resident physician from Western Africa in the Department of Radiation Oncology.

26.     At all relevant times, Defendant Shu was employed as a Professor and Physician in the Department of Radiation Oncology.

27.     Defendant Shu is an American male of East-Asian descent.

28.     Plaintiff was ranked in the 97th percentile for an American College of

Radiology Radiation Oncology In-Training Examination in March 2015.

29.     Prior to July 2015, Plaintiff primarily received evaluation ratings of

"Superior" from professors other than Defendant Shu.

30.     As early as January 2015, Defendant Shu would only give Plaintiff a

rating of "Satisfactory."

31.     Defendant Shu's evaluations of Plaintiff were consistently lower than

contemporaneous evaluations Plaintiff received from other professors.

32.     Defendant Shu's evaluations of Plaintiff were consistently lower than

Defendant Shu's evaluations of comparable residents of races other than

Black.

33.     Defendant Shu's evaluations of Plaintiff were consistently lower than

Defendant Shu's evaluations of comparable residents with national origins

other than those in Western Africa.

34.     In May 2015, Plaintiff approached Ashesh Jani, the Program Director

of the Department of Radiation Oncology at the time, and reported that

Plaintiff believed Defendant Shu's evaluations of Plaintiff were

discriminatory.

35.    Defendants Emory University and Emory Healthcare took no action to investigate or address Defendant Shu's actions.

36.    In July 2015, Plaintiff suffered a major depressive episode linked to traumatic events occurring in his personal life at the time.

37.    Plaintiff informed Defendants of his depression and the difficulties he was facing.

38.    Plaintiff requested help through the Emory Faculty Staff Assistance Program.

39.    While Plaintiff's performance declined temporarily, Plaintiff continued to perform his duties while meeting or exceeding the standards of the program.

40.    Plaintiff requested assistance from Defendant Shu in improving his performance.

41.    Defendant Shu refused to assist Plaintiff.

42.    Defendant Shu assisted and mentored residents of races other than Black.

43.    Defendant Shu assisted and mentored residents of national origins other than those in Western Africa.

44.     Defendant Shu assisted and mentored residents who had no known disabilities.

45.     In December 2015, Plaintiff was placed on academic probation.

46.     The committee that decided to place Plaintiff on academic probation was composed of doctors who had not worked with Plaintiff before, except that Defendant Shu was on the committee.

47.     On at least one occasion, Defendant Shu influenced the review Plaintiff received from another professor.

48.     During Plaintiff's November-December 2015 rotation, Plaintiff was supervised by Defendant Shu and Dr. Arif Ali.

49.     During the rotation in Paragraph 48, Dr. Ali had little interaction with Plaintiff.

50.     Dr. Ali's review of Plaintiff's performance was negatively influenced by Defendant Shu's portrayal of an alleged incident which was determined to be baseless.

51.     Plaintiff's performance improved following November 2015.

52.     By January 2016, Plaintiff's performance was once again superior or above average.

53.     Defendant Shu nevertheless continued to give Plaintiff lower scores than Plaintiff contemporaneously received from other professors.

54.     On or about February 12, 2016, Plaintiff was notified via letter that he would undergo a performance evaluation once his reviews from the January-February rotation were submitted.

55.     The letter detailed in Paragraph 54 informed Plaintiff that he was in danger of termination depending on the results of the review to be performed.

56.     Plaintiff's January-February rotation started on January 1, 2016, and ended February 29, 2016.

57.     On or about February 23, 2016, Plaintiff was notified that he was being terminated, effective July 1, 2016.

58.     Plaintiff's January-February performance reviews were submitted on March 14, 2016, and May 11, 2016.

59.     Defendant Shu was on the committee that made the decision to terminate Plaintiff.

60.     Only one committee member other than Defendant Shu had any experience working with Plaintiff:  Dr. Karen Godette.

61.     Dr. Godette only worked with Plaintiff after Plaintiff was placed on academic probation.

62.     Dr. Godette voted to place Plaintiff on academic probation based on Defendant Shu's description of his experience with Plaintiff.

63.     When Dr. Godette performed her own review of Plaintiff's work – after voting to terminate Plaintiff – Dr. Godette gave Plaintiff an overall satisfactory rating.

64.     Similarly situated white residents were not placed on probation unless their performance or conduct rose to the level of causing substantial harm or death to a patient.

65.     Similarly situated white residents were given more time to improve performance while on academic probation.

66.     Similarly situated United States nationals were not placed on probation unless their performance or conduct rose to the level of causing substantial harm or death to a patient.

67.     Similarly situated United States nationals were given more time to improve performance while on academic probation.

68.     Similarly situated residents without known disabilities were not placed on probation unless their performance or conduct rose to the level of causing substantial harm or death to a patient.

69.     Similarly situated residents without known disabilities were given more time to improve performance while on academic probation.

70.     Plaintiff was terminated effective July 1, 2016.

71.     Plaintiff's termination violated procedural safeguards and policies set forth in the Emory University Department of Radiation Oncology Residency Program Manual.

## Count I:  Race Discrimination under Title VI

72.     Plaintiff reasserts and incorporates Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     Plaintiff is a member of a protected class by virtue of his race.

74.     Plaintiff suffered the adverse action of academic probation.

75.     Plaintiff suffered the adverse action of termination.

76.     Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-32, 40-42, 46-50, and 53 of this Complaint.

77.     Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 64-65 of this Complaint.

78.     Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

79.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

80.     Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, attorney fees, and litigation costs.

81.     Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count I.

## **Count II:  National Origin Discrimination under Title VI**

82.     Plaintiff reasserts and incorporates Paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     Plaintiff is a member of a protected class by virtue of his national origin.

84.     Plaintiff suffered the adverse action of academic probation.

85.     Plaintiff suffered the adverse action of termination.

86.     Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-31, 33, 40-41, 43, 46-50, and 53 of this Complaint.

87.     Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 66-67 of this Complaint.

88.     Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

89.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

90.     Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, attorney fees, and litigation costs.

91.     Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count II.

## Count III:  Race Discrimination under Title VII

92.     Plaintiff reasserts and incorporates Paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     Plaintiff is a member of a protected class by virtue of his race.

94.     Plaintiff suffered the adverse action of academic probation.

95.     Plaintiff suffered the adverse action of termination.

96.     Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-32, 40-42, 46-50, and 53 of this Complaint.

97.     Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 64-65 of this Complaint.

98.     Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

99.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

100.    Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, punitive damages, attorney fees, and litigation costs.

101.    Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count III.

**Count IV:  National Origin Discrimination under Title VII**

102.        Plaintiff reasserts and incorporates Paragraphs 1 through 101 of

this Complaint as if fully set forth herein.

103.        Plaintiff is a member of a protected class by virtue of his

national origin.

104.        Plaintiff suffered the adverse action of academic probation.

105.        Plaintiff suffered the adverse action of termination.

106.        Discriminatory animus may be inferred from Defendant Shu's

behavior towards Plaintiff, as detailed in Paragraphs 30-31, 33, 40-41, 43,

46-50, and 53 of this Complaint.

107.        Discriminatory animus may be inferred from comparators, as

detailed in Paragraphs 66-67 of this Complaint.

108.        Defendants' alleged reason for placing Plaintiff on academic

probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this

Complaint.

109.        Defendants' alleged reason for terminating Plaintiff is

illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

110.        Plaintiff is therefore entitled to reinstatement, full back pay plus

interest, compensatory damages for loss of reputation and emotional distress,

punitive damages, attorney fees, and litigation costs.

111.       Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count IV.

## Count V:  Race Discrimination under Section 1981

112.       Plaintiff reasserts and incorporates Paragraphs 1 through 111 of this Complaint as if fully set forth herein.

113.       Plaintiff is a member of a protected class by virtue of his race.

114.       Plaintiff suffered the adverse action of academic probation.

115.       Plaintiff suffered the adverse action of termination.

116.       Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-32, 40-42, 46-50, and 53 of this Complaint.

117.       Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 64-65 of this Complaint.

118.       Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

119.       Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

120.     Plaintiff is therefore entitled to reinstatement, full back pay plus

interest, compensatory damages for loss of reputation and emotional distress,

punitive damages, attorney fees, and litigation costs.

121.     Defendants Emory Healthcare, Emory University, and Hui-Kuo Shu

are liable to Plaintiff under Count V.

**Count VI:  Disability Discrimination under the ADA Title III**

122.     Plaintiff reasserts and incorporates Paragraphs 1 through 121 of this

Complaint as if fully set forth herein.

123.     Plaintiff is a qualified individual with the disability of depression.

124.     Plaintiff suffered the adverse action of academic probation.

125.     Plaintiff suffered the adverse action of termination.

126.     Discriminatory animus may be inferred from Defendant Shu's

behavior towards Plaintiff, as detailed in Paragraphs 30-31, 40-41, 46-50,

and 53 of this Complaint.

127.     Discriminatory animus may be inferred from comparators, as detailed

in Paragraphs 68-69 of this Complaint.

128.     Defendants' alleged reason for placing Plaintiff on academic

probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this

Complaint.

129.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

130.     Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, attorney fees, and litigation costs.

131.     Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count VI.

### Count VII:  Disability Discrimination under the ADA Title I

132.     Plaintiff reasserts and incorporates Paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133.     Plaintiff is a qualified individual with the disability of depression.

134.     Plaintiff suffered the adverse action of academic probation.

135.     Plaintiff suffered the adverse action of termination.

136.     Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-31, 40-41, 46-50, and 53 of this Complaint.

137.     Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 68-69 of this Complaint.

138.     Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

139.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

140.     Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, punitive damages, attorney fees, and litigation costs.

141.     Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count VII.

## Count VIII:  Disability Discrimination under the RA

142.     Plaintiff reasserts and incorporates Paragraphs 1 through 141 of this Complaint as if fully set forth herein.

143.     Plaintiff is a qualified individual with the disability of depression.

144.     Plaintiff suffered the adverse action of academic probation.

145.     Plaintiff suffered the adverse action of termination.

146.     Discriminatory animus may be inferred from Defendant Shu's behavior towards Plaintiff, as detailed in Paragraphs 30-31, 40-41, 46-50, and 53 of this Complaint.

147.     Discriminatory animus may be inferred from comparators, as detailed in Paragraphs 68-69 of this Complaint.

148.     Defendants' alleged reason for placing Plaintiff on academic probation is illegitimate, as demonstrated in Paragraphs 39 and 46 of this Complaint.

149.     Defendants' alleged reason for terminating Plaintiff is illegitimate, as demonstrated in Paragraphs 54-58 of this Complaint.

150.     Plaintiff is therefore entitled to reinstatement, full back pay plus interest, compensatory damages for loss of reputation and emotional distress, attorney fees, and litigation costs.

151.     Defendants Emory Healthcare and Emory University are liable to Plaintiff under Count VIII.

## **Prayer for Relief**

WHEREFORE Plaintiff respectfully prays for relief as follows:

A.      For a trial by jury;

B.      For a finding that Defendants violated Plaintiff's rights as set forth

herein;

C.      For a judgment in Plaintiff's favor for reinstatement, full back pay

plus interest, compensatory damages for loss of reputation and emotional

distress, punitive damages, attorney fees, and litigation costs; and

D.      Any such other and further relief as the Court deems proper and just.

This 16th day of June, 2017.

Respectfully submitted,
The Kirby G. Smith Law Firm, LLC


s/ Micah Barry
Micah Barry
Georgia Bar No. 103184
Kirby G. Smith
Georgia Bar No. 250119
*Attorneys for Plaintiff*

The Kirby G. Smith Law Firm, LLC
4488 North Shallowford Road
Suite 105
Atlanta, GA 30338
Phone:  (844) 454-7529
Fax:  (877) 352-6253
mjb@kirbygsmith.com
kgs@kirbygsmith.com

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this

Complaint.

This 16th day of June, 2017.

Respectfully submitted,
The Kirby G. Smith Law Firm, LLC

s/ Micah Barry
Micah J. Barry
Georgia Bar No. 103184

## <u>FONT AND POINT CERTIFICATION</u>

The Undersigned counsel for Plaintiff certifies that the within and foregoing

**COMPLAINT** was prepared using Times New Roman, 14-point font in

accordance with LR 5.1(B).

This 16th day of June, 2017.

Respectfully submitted,
THE KIRBY G. SMITH LAW FIRM, LLC


By:   <u>s/ Micah Barry</u>
      Micah Barry
      Georgia Bar No. 103184